Fuller-Warren Co. vs. Harter.

FULLER-WARREN COMPANY, Respondent, vs. HARTER, Appellant.

*March 21 — April 9, 1901.*

Actions: Election of remedies: Sales of chattels: Fixtures: Preservation of chattel character: Rights of vendor and mortgagee.

1. The rule that a choice of one of two inconsistent remedies or causes of action waives the other, applies only where there are two such remedies or causes of action.

2. If a person pursues a cause of action which he erroneously supposes he has and is defeated because of the error, he is not precluded thereby from suing over upon the proper cause of action.

3. The vendor of personal property sold to be and in fact attached to real estate by the owner thereof or with his consent, as a permanent improvement, may by contract with such owner preserve the chattel character of the accession.

4. In the circumstances stated, the character of the accession cannot be preserved by contract between the vendor and vendee of the personalty as against the owner of a mortgage of the realty existing when the accession is made, who is not a party to such contract.

5. A contract between a vendor and vendee of personal property to be incorporated into the real estate of the latter as a permanent improvement thereof, such realty being incumbered by mortgage and the mortgagee not being a party to the contract, reserving the title to or any lesser interest in the subject of the sale after such improvement, for any purpose, is invalid as to the mortgagee.

6. Personal property annexed to mortgaged real estate which, as between mortgagor and mortgagee, becomes part of the mortgage security, becomes such as between the latter and a third person regardless of any contract between the former and such person and whether the removal thereof from the building can be effected without material injury thereto or to the value of the mortgage security as it existed prior to the accession.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the county court of Waukesha county: M. S. GRISWOLD, Judge. *Reversed.*

Action for a wrongful conversion of personal property. The trial was by the court. The findings were to the effect

Fuller-Warren Co. vs. Harter.

that in 1894 plaintiff sold and delivered to Ann T. Shurts a
No. 290 Fuller & Warren hot-air furnace and the necessary
connections for use in heating her dwelling house, and
caused the same to be set up therein under a contract guar-
anteeing the capacity thereof to heat such house to a specific
temperature under specified conditions, and providing that,
in the event of a failure so to do and notice thereof to plaint-
iff, it should have the option to make the plant do the work
guaranteed or remove the same, plaintiff refunding any
money that may have been paid thereon. Mrs. Shurts
claimed that the property failed to fill the guaranty. She
gave plaintiff notice thereof and that she would not accept
or pay for the apparatus. Plaintiff then endeavored to
remedy the alleged insufficiency, but failed, whereupon Mrs.
Shurts refused to accept the apparatus and offered to return
it. Plaintiff, claiming that the plant was as good as guar-
anteed, sued to recover the purchase price thereof and to en-
force such recovery under the lien laws of the state because
it was incorporated with and a part of the real estate on
which it was located. Judgment was rendered in favor of
Mrs. Shurts because the sale contract had been rightfully
rescinded on the ground that the plant wholly failed to come
up to the guaranty. When the plant was put in place there
was a real-estate mortgage on the house. Before the final
determination of the action against Mrs. Shurts such pro-
ceedings were duly taken to enforce such mortgage that
defendant herein became the owner of the property as pur-
chaser at the foreclosure sale, and is still such owner. The
plant never became a part of the building in which it was
located so but that it could be removed without material in-
jury thereto. Seasonably after the decision aforesaid, plaint-
iff asserted its right to the plant as personal property, and
before this action commenced demanded of defendant, who
was then in possession of the real estate, the right to sever

Fuller-Warren Co. vs. Harter.

such plant therefrom and remove it, which was refused. The value of the furnace and its connections is $180.

Upon such findings judgment was rendered in plaintiff's favor and defendant appealed.

For the appellant there was a brief by *Tullar & Lockney*, and oral argument by *D. S. Tullar*.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *C. F. Fawsett* and *J. G. Flanders*.

MARSHALL, J. The first point made by appellant, that is deemed sufficiently important to be worthy of consideration, is that plaintiff, having elected to sue upon the contract when a way was open to treat it as at an end and to take the property in controversy, was legally bound thereby, and that the trial court should have so held by dismissing this action. The rule is quite familiar that a person cannot have the benefit of two inconsistent remedies or causes of action; that when there are such, either of which will remedy the wrong against him, the choice of one forever waives the other. Many applications of that have been made by this court. *Warren v. Landry*, 74 Wis. 144; *Crook v. First Nat. Bank*, 83 Wis. 31; *Bank of Lodi v. Washburn E. L. & P. Co.* 98 Wis. 547; *Carroll v. Fethers*, 102 Wis. 436. It was very recently quite thoroughly discussed in *Barth v. Loeffelholtz*, 108 Wis. 562. Does that rule apply where a person, supposing he has two causes of action for the satisfaction of his claim, when he in fact has but one, sues upon the supposed cause which has no existence, and is defeated on that ground? Is he under such circumstances precluded from suing upon the only cause of action which he in fact had? The proposition of appellant's counsel is that, because plaintiff sued upon the contract, supposing it had a cause of action thereon, and was defeated because the contract had been rightfully rescinded by defendant's predecessor, leav-

ing the subject thereof the property of respondent, it must nevertheless lose the same because another remedy is neces-sary to its recovery; that while it was defeated because the subject of the action was not the property of Mrs. Shurts, it is in any event powerless to claim the thing which, by the judgment of the court, it owns. That seems to be unrea-sonable. If the doctrine as to the effect of an election be-tween two inconsistent causes of action goes that far, it is certainly liable to cause great injustice in some cases. That, of itself, without investigation, suggests that it does not go that far. We should hesitate to sustain counsel's theory if the question involved was new, but it is not.

The same seemingly unreasonable application of the rule, as regards the effects of an election between inconsistent remedies, as that contended for here, has been several times insisted upon in other courts, as appears from reported cases, and always unsuccessfully. In *Morris v. Rexford*, 18 N. Y. 552, the circumstances were that plaintiff sold a quantity of oats to the defendant, payment therefor to be made on de-livery. The delivery was made but the purchase price was not paid. After some delay the plaintiff endeavored to re-scind the sale contract and brought replevin. Subsequently he sued for the purchase price of the oats. On the trial it did not appear that recovery was had in the replevin action or what had become of the same. The court held that the mere commencement of the replevin action did not neces-sarily preclude plaintiff from prosecuting the action on the sale contract; that whether there was an election of remedies within the meaning of the rule on that subject depended upon whether the plaintiff had in fact two remedies; that if he had but one, the pursuit of one that he did not possess would not bar him from subsequently resorting to the one which he did possess. In *Kinney v. Kiernan*, 49 N. Y. 164, the court stated the rule in these words: " The institution by a party of a fruitless action, which he has not the right

to maintain, will not preclude him from asserting the rights he really possesses." In *McNutt v. Hilkins*, 80 Hun, 235, the decision was based on that in the preceding case cited. The rule declared substantially fits the exact facts of this case. The syllabus states it briefly as follows:

"An action brought for the conversion of personal property, wherein it was successfully maintained by the defendant that the title to the personal property alleged to have been converted was in him and in which judgment was rendered in his favor is not a bar to a subsequent action between the same parties brought to recover damages for breach of the contract of the sale of such property."

In reaching such conclusion the court used the following language as to the contention of the losing party:

"The defendants, by their contention, succeeded in establishing that there had been an absolute sale, and that, therefore, the plaintiff had mistaken her remedy, and they cannot now set up the judgment which they then obtained to prevent the plaintiff recovering the purchase price of the property which they formerly urged and established was sold to them by her, and which it is conceded they have not paid for, and thus not only retain the property, but also the purchase price."

To the same effect are *In re Van Norman*, 41 Minn. 494; *Gould v. Blodgett*, 61 N. H. 115.

In applying the rule as regards the effect of a choice between two inconsistent remedies or causes of action, it must be kept in mind that there must be two such remedies or causes of action, in fact, before a choice can be made within the meaning of the rule. A misconception of remedies should not be mistaken for an election between inconsistent remedies. Here there was no remedy upon the contract. Mrs. Shurts recovered of plaintiff upon that ground. Such recovery effectively answers the suggestion that the resort to the supposed remedy stands in the way of insisting upon the only remedy plaintiff had. Not only is plaintiff not bound as having made an election of one of two inconsist-

ent remedies, but Mrs. Shurts, and appellant claiming under her, are estopped by the former judgment from asserting to the contrary or that the property in dispute was not the property of respondent, at least as between it and Mrs. Shurts, and as between it and the appellant unless the fact be otherwise because as against him the heating plant became a part of the real estate and passed to him under the foreclosure sale.

So, as between Mrs. Shurts and respondent, the heating plant is personal property, notwithstanding its physical annexation to the building it was designed to heat. The plant was not simply set up in Mrs. Shurts's building on trial. It was actually sold and delivered to her and placed in her building to remain there as an improvement thereof, subject to the guaranty of its efficiency. The parties were competent to preserve its character as personalty, between themselves. That does not admit of a question. *Smith v. Waggoner*, 50 Wis. 155; *Fitzgerald v. Anderson*, 81 Wis. 341; *Keefe v. Furlong*, 96 Wis. 219. They accomplished that, though the relations of vendor and vendee between them were not severed by resorting to the contract in that regard, but by the use by Mrs. Shurts of her remedy for the breach of warranty.

Did the heating plant become a fixture as to the mortgagee? That is the important question. That there was an intent on the part of respondent and Mrs. Shurts that it should be incorporated into and made a part of the building, subject to the right of the former to reclaim the same in case of inability to make the apparatus do the work guaranteed, is unquestioned. As before indicated, the contract of sale contemplated physical annexation of the plant to and incorporation of it with the building it was designed to heat as a permanent improvement thereof, reserving the right to remove it as a mere security against losing the property as well as the pay for it if it failed to satisfy the war-

ranty. All the essentials to change the chattel character
of the property to real estate were satisfied, viz.: physical
annexation of one to the other, adaptation of the improve-
ment to the use to which the realty was devoted, and intent
of the person causing the annexation to make a permanent
improvement of the freehold. Tyler, Fixtures, 114; *Gun-
derson v. Swarthout*, 104 Wis. 186. The relations between
the parties after the plant was set up were substantially the
same as they would have been had respondent sold it under
an agreement that the title thereto should not pass to the
vendee till it was paid for, and if payment was not made
respondent should have the right to remove it from the
building, doing no more injury thereto than necessary.
Counsel for appellant claim that personal property incorpo-
rated into mortgaged realty under such circumstances, and
without the mortgagee being a party to the transaction, be-
comes a part of the mortgage security, and cite many au-
thorities to support that view. Counsel for respondent
claim that in such circumstances, where the accession can
be severed from the realty without injury to the latter or
to the value of the security for the mortgage debt as it
stood before the improvement was made, the same character
is impressed upon the accession as between the vendor and
the mortgagee as between the vendor and mortgagor; in
other words, that it does not become real estate, and may
be severed from the realty and removed without invading
the rights of the mortgagee. The learned trial court so
held and there is ample authority to support that view, to
some of which counsel for respondent have referred us. The
difficulty is that there are two well-defined doctrines on the
subject, one being directly opposed to the other. In many
jurisdictions the doctrine contended for by appellant's coun-
sel prevails, and in many others that contended for by re-
spondent's counsel prevails. The former view is maintained
by the following of the numerous authorities that might

be cited: *Miller v. Wilson,* 71 Iowa, 610; *Clary v. Owen,* 15 Gray, 522; *Pierce v. George,* 108 Mass. 78; *Smith P. Co. v. Servin,* 130 Mass. 511; *Southbridge S. Bank v. Mason,* 147 Mass. 500; *Meagher v. Hayes,* 152 Mass. 228; *Watertown S. E. Co. v. Davis,* 5 Houst. 192; *Hawkins v. Hersey,* 86 Me. 394; *McFadden v. Allen,* 134 N. Y. 489.   The latter view is as firmly maintained by the following of many authorities that might be mentioned: *Campbell v. Roddy,* 44 N. J. Eq. 244; *Binkley v. Forkner,* 117 Ind. 185; *Hill v. Sewald,* 53 Pa. St. 271; *Crippen v. Morrison,* 13 Mich. 23; *Belvin v. Raleigh P. Co.* 123 N. C. 138; *German S. & L. Soc. v. Weber,* 16 Wash. 95; *Northwestern M. L. Ins. Co. v. George,* 77 Minn. 319.

In *Clary v. Owen,* 15 Gray, 522, the Massachusetts court, speaking by Mr. Justice Hoar, said:

"We think it is not in the power of the mortgagor, by any agreement made with a third person after the execution of the mortgage, to give to such person the right to hold anything to be attached to the freehold, which as between mortgagor and mortgagee would become a part of the realty."

In *Meagher v. Hayes,* 152 Mass. 228, the same court said that a building put on mortgaged land and annexed to it in the usual way, without the mortgagee being a party to the transaction, became a part of the mortgage security notwithstanding an agreement between the owner of the building and the mortgagor that it should remain personal property with the right of such owner to remove it, and that the purchaser of the land at the foreclosure sale became the owner of such building, though he bought with notice of such agreement.   In *Hawkins v. Hersey,* 86 Me. 394, the supreme court of Maine, speaking by Mr. Justice Whitehouse, said:

"When machinery is sold and placed in a building for the purpose of making it available as a manufactory and permanently increasing its value for occupation, an agreement

between the seller and buyer that the title shall remain in the former until it is wholly paid for, will not bind or affect the mortgagee of the realty without notice, and such machinery will pass to the mortgagee as a part of the realty."

On the other hand, in *German S. & L. Soc. v. Weber*, 16 Wash. 95, the supreme court of Washington said that material sold and used in the construction of a building located upon mortgaged real estate, under an agreement with the mortgagor that the seller shall retain the title to such material till paid for, with the right to remove the same in case of nonpayment, does not become a part of the building and realty so that the mortgage lien will attach thereto as against the seller, if such material can be removed from the building without injury thereto. Similar language was used by the Minnesota court in *Northwestern M. L. Ins. Co. v. George*, 77 Minn. 319, where it was held that an apparatus, which formed a necessary part of a cold-storage plant and was attached to the storage building subsequent to the execution of a mortgage thereon, under an agreement between the vendor of the apparatus and the mortgagor that the former should retain the title thereto till it should be paid for, and have the right to remove the same in case of default, did not become a part of the mortgaged realty, but remained personal property during the existence of the condition, as against both mortgagor and mortgagee, since its removal from the building to which it was attached was shown to be practical without injuring such building or the value of the mortgage security as it existed before the apparatus was placed therein. The other cases cited to that doctrine are to the same effect. Probably the leading case on the subject is *Campbell v. Roddy*, 44 N. J. Eq. 244, where the two doctrines are discussed at great length.

The rule that a contract between a mortgagor of real estate and his vendor of chattels, to be and which are actually wrought into such real estate as an improvement thereof,

Fuller-Warren Co. vs. Harter.

will preserve the chattel character of the accession, does not militate against the mortgage attaching thereto as a part of the security if the mortgagee is not a party to such agreement, is referred, for its original support in this country, most generally to the supreme court of Massachusetts, and it is sometimes called the Massachusetts rule. If it applies to this case, the finding that it is practicable to remove the heating plant from the appellant's building is immaterial, and the judgment appealed from is wrong.

It seems that this court adopted the so-called Massachusetts rule at a very early day, in *Frankland v. Moulton*, 5 Wis. 1, where the opinion was delivered by Chief Justice WHITON, citing *Winslow v. Merchants Ins. Co.* 4 Met. 306; *Corliss v. McLagin*, 29 Me. 115; and *Butler v. Page*, 7 Met. 40. The circumstances in the *Frankland Case* were that machinery was sold to the owner of the real property while it was incumbered by an equitable mortgage, to be attached to such realty as an improvement thereof, the vendor of the machinery retaining a chattel-mortgage interest therein to secure the payment of the purchase money. It was held that the chattel mortgage was wholly inoperative as against the holder of the equitable mortgage; that the agreement between the chattel mortgagee and mortgagor, preserving the chattel character of the machinery after it was physically attached to and had become an appropriate improvement of the building in which it was located, was effective only between the parties to such mortgage. In *Kendall Mfg. Co. v. Rundle*, 78 Wis. 150, a chattel mortgage was taken, by the vendor of a heating plant set up in a building, to secure the purchase money of such plant, and it was held that the chattel mortgage was not effective to preserve the chattel character of the heating plant as against prior lien claims upon the property. The very opposite was held in *Campbell v. Roddy*, 44 N. J. Eq. 244, the leading New Jersey case to which we have referred, where several Massa-

chusetts cases that have received the approval of this court. were reviewed and rejected as unsound. *Frankland v. Moulton*, in principle, covers the whole subject under discussion. It does not appear ever to have been criticised here since it. was decided, but has been repeatedly approved as stating the true rule. *Smith v. Waggoner*, 50 Wis. 155; *Taylor v. Collins*, 51 Wis. 123; *Kendall Mfg. Co. v. Rundle, supra; Homestead L. Co. v. Becker*, 96 Wis. 206; *Gunderson v. Swarthout*, 104 Wis. 186.

The judicial policy of this state having been established for nearly half a century, as indicated, it is considered that we are not permitted to question it now. The opposite doctrine may be the most equitable. It is probably supported by the greater weight of authority if that is to be determined by the number of decisions. Possibly it may be by the better reasoning, though the indications, it is believed, from a study of the numerous cases that have dealt with the subject in recent years, are that it has been losing rather than gaining ground. The tendency of courts is to fence it within as narrow limits as practicable. For example, in *McFadden v. Allen*, 134 N. Y. 489, decided in 1892, the Massachusetts rule, so called, was adopted in its entirety, with the possible exception of where an interest in the accession to realty is reserved as security for purchase money. In all other cases it was distinctly said that a contract between a mortgagor and a third person, preserving the chattel character of property added to real estate, as an improvement thereof during the life of the mortgage thereon, is ineffective as against the mortgagee unless he is a party to the transaction; and that the question of whether it can or cannot be removed without injury to the realty is. immaterial. What reason there is for saying that a contract between a vendor of chattels and a mortgagor of real estate, in regard to the character of the former after being incorporated into the latter, shall be binding on the mort-

Fuller-Warren Co. vs. Harter.

gagee in one case and not in another, when the mortgagor is left in the same position, without the benefit of the accession to the realty, in one case as in the other, is not easily perceived. *McFadden v. Allen* seems to limit or overrule some early New York cases cited by the New Jersey court as supporting authorities. The general rule stated in the New York court is in perfect harmony with the holdings of the Massachusetts court. It is as follows:

"The lien of the mortgagee covers all that was realty when he accepted the security, and all accessions to the realty except when, by a valid agreement to which he is a party, the character of chattels is impressed upon them."

The invalidity of a contract between a mortgagor of realty and his vendor of chattels to be annexed and which are annexed to the mortgaged property, preserving the chattel character of the accessions, has been recently repeatedly maintained by the federal courts. *Phœnix I. W. Co. v. New York S. & T. Co.* 83 Fed. Rep. 757; *Porter v. Pittsburg B. S. Co.* 120 U. S. 649; *S. C.* 122 U. S. 283.

In a New Jersey case decided in 1898,— *General E. Co. v. Transit E. Co.* 57 N. J. Eq. 460,— a conclusion was reached contrary to that of the federal supreme court in the case last above cited, such court's decision being vigorously attacked as promulgating an unsound doctrine. The difficulty is that the judicial policy of the federal court, indicated in the several cases cited, and the other courts that are in harmony therewith, is one way, while that of the New Jersey court and others in harmony with its policy is the other. Each court having adopted a policy for its jurisdiction, for it that policy is the proper one and the opposite policy is unsound. An expression in *Phœnix I. W. Co. v. New York S. & T. Co.* may be cited as indicating clearly that, where the doctrine prevails that the vendor of chattels to be attached to real estate cannot control their character after the accession is made, as against the mortgagee of the realty,

by a contract with the mortgagor, the question of whether such accession can be severed from the realty without injury thereto is of no significance. CLARK, district judge, in delivering the opinion of the court of appeals, said: " The determination of the case does not depend on any narrow question of mere physical injury to the building in the removal of the machinery placed therein."

*Walker v. Grand Rapids F. M. Co.* 70 Wis. 92, is cited to our attention by respondent's counsel with confidence, but we think it has no application to the facts of this case. There an apparatus for a gristmill was consigned by the manufacturer to a contractor who was engaged in building over the mill for the owner, with permission to set it up for trial. There was no sale, conditional or otherwise. The owner of the apparatus did not part with the title or have any intention of adding the apparatus to the mill as a permanent improvement thereof, conditional or otherwise. If there had been no sale of the heating plant in question, conditional or otherwise, but a mere permission obtained of Mrs. Shurts to set it up in her house and test it, there would be some analogy between this case and *Walker v. Grand Rapids F. M. Co.* Whether it could be removed under such circumstances might depend upon whether the removal would materially injure the building to which it was attached. The trouble is that it was actually sold and delivered to Mrs. Shurts. The title thereto passed to her. She afterwards divested herself of the title as between herself and respondent, by rescinding the sale contract for breach of warranty, as before indicated.

There appears to be no legitimate way open to us to decide otherwise than that the trial court adopted the wrong doctrine in reaching a conclusion in this case. It was made to turn upon two facts: first, the heating plant is personal property as between the mortgagor and respondent because of the contract between them; second, it is of the same char-

Fuller-Warren Co. vs. Harter.

acter as regards appellant claiming under the mortgage, because it can be removed without any material injury to the realty. Those facts are entirely immaterial, since the title to the heating plant was vested in Mrs. Shurts and set up in her building as a permanent improvement thereof, subject to the contract right reserved to remove it, as a mere security against loss thereof to the vendor in case it failed to satisfy the warranty. The intention that the plant should actually be incorporated into the realty, regardless of the conditional right reserved, satisfied the element of intent necessary to make the plant realty as between the vendor thereof and the mortgagee of such realty. As soon as the accession to the realty took place, the mortgage lien attached thereto and could not thereafter be removed without either payment of the mortgage or the mortgagee's consent. The rule stated in *Homestead L. Co. v. Becker*, 96 Wis. 206, applies. There being no intention to remove the chattel when it was attached to the realty, it passed to appellant under the mortgage, who acquired title by the foreclosure thereof, and this although it was capable of being removed without injury to the building. Mr. Justice PINNEY, in so stating the rule, cited in support thereof *Frankland v. Moulton*, 5 Wis. 1, and one of the leading Massachusetts cases.

*By the Court.*— The judgment is reversed, and the cause remanded with directions to render judgment in defendant's favor for costs.