In the Matter of ROSENBERG IRON & METAL CO., a Wisconsin corporation, Bankrupt.

No. 61-B-2185.

United States District Court
E. D. Wisconsin.

April 7, 1964.

John H. Wessel, Milwaukee, Wis., for petitioner, Dempster Brothers, Inc.

Irvin B. Charne, Milwaukee, Wis., for trustee.

GRUBB, District Judge.

Rosenberg Iron & Metal Co., the bankrupt, purchased a baling press from Dempster Brothers, Inc. (hereinafter called "Dempster") on May 20, 1958, paying $23,504.95 down and giving a conditional sales contract to secure the balance of $43,483.53. This contract was filed with the Register of Deeds for Milwaukee County on June 18, 1958, pursuant to the requirements of Section 122.05 of the Wisconsin Statutes. Dempster failed to refile this conditional sales contract upon the expiration of three years following the original recording as

required by Section 122.11 of the Wisconsin Statutes in order for the conditional sales contract to remain valid as against subsequent purchasers and creditors of the conditional vendee.

On June 27, 1961, Rosenberg Iron & Metal Co. executed a voluntary assignment of its assets for the benefit of creditors pursuant to Chapter 128 of the Wisconsin Statutes. The Circuit Court for Milwaukee County appointed a receiver and entered an order which restrained other proceedings, limited the time to file claims, designated a depositary, and directed notice to creditors. This restraining order was entered on June 28, 1961. On November 3, 1961, Rosenberg Iron & Metal Co. was thrown into involuntary bankruptcy. The trustee in bankruptcy took possession of the baling press in question here.

Dempster filed a petition of reclamation for the baling press. The Referee in Bankruptcy in a decision dated August 29, 1962, denied the reclamation claim. The decision is based on the conclusion that by virtue of Section 70, sub. c of the Bankruptcy Act, the so-called "strong arm clause," the lien of Dempster was invalid as to the trustee. The decision further indicates that the trustee might also enjoy rights superior to Dempster through the operation of Section 70e(1) of the Bankruptcy Act. Dempster has petitioned this court for a review of the Referee's decision.

Section 70c of the Bankruptcy Act provides:

"The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee, as to all property, whether or not coming into possession or control of the court, *upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy*, shall be deemed

vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists." (Emphasis supplied.)

The trustee is thus held to enjoy the same rights that a hypothetical creditor with a perfected lien would have against any given property at the date of bankruptcy. Lewis v. Manufacturers National Bank of Detroit, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961).

The issue is whether the trustee, by virtue of his position under Section 70, sub. c, enjoyed rights superior to Dempster on November 3, 1961, the date of bankruptcy. Counsel for claimant contends that because of the state court restraining order, no creditor could have secured a lien on the date of bankruptcy and therefore the trustee as a hypothetical creditor on that date is in no better position.

The leading publications on bankruptcy and many of the decisions interpreting Section 70c merely assert the black letter rule that the trustee in bankruptcy has the standing of a hypothetical holder of a lien by legal proceedings as of the date of bankruptcy. See: MacLachlan on Bankruptcy; Colliers on Bankruptcy; Myers v. Matly, 318 U.S. 622, 63 S.Ct. 780, 87 L.Ed. 1043 (1943); In re Kranz Candy Co., 214 F.2d 588 (7th Cir. 1954); Lewis v. Manufacturers National Bank of Detroit, supra. These cases and authorities never seem to concern themselves with the clause of Section 70c which appears to limit the trustee's position as a hypothetical lien creditor to those situations " * * * upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, * * *." The clear language of this phrase indicates that the trustee does not automatically enjoy the position of a lien creditor. It must first have been possible for an actual creditor to secure a lien on the date of bankruptcy.

The legislative history of Section 70c is also revealing. This so-called "strong arm clause" first appeared in the Bankruptcy Act in 1910 and provided that the trustee in bankruptcy " * * * as to all property * * * coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; * * *." Section 47a(2), as amended June 25, 1910, 36 Stat. 838, 840. The Chandler Act moved the clause out of Section 47 and put it into Section 70 and made explicit the idea that the trustee's standing here was in no way dependent upon the existence of an actual creditor with a lien or execution. Act of June 22, 1938, 52 Stat. 840, 881. Subdivision c was recast in 1950 and provided:

" * * * The trustee, as to all property of the bankrupt at the date of bankruptcy whether or not coming into possession or control of the court, *shall be deemed* vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists." Act of March 18, 1950, P.L. 461, 81st Cong., 2d Sess., 64 Stat. 24, 26. (Emphasis supplied.)

When the statute was amended in 1952, there was inserted for the first time the qualifying language—"upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy." The legislative intent behind this change appears to merely clarify an inconsistency appearing in the section as amended in 1950. House Report No. 2320 appearing in Vol. 2 of the 1952 United States Code Congressional and Administrative News at page 1976 puts it this way:

" * * * Section 70c was amended in the last Congress * * *, simplifying the subdivision and conforming it to the amended section 50a. However, it is now recognized

that the amendment did not accurately express what was intended. Since the trustee already has title to all of the bankrupt's property, it is not proper to say that he has the rights of a lien creditor upon his own property. *What should be said is that he has the rights of a lien creditor upon property in which the bankrupt has an interest or as to which the bankrupt may be the ostensible owner.* Accordingly, the language of section 70c has been revised so as to clarify its meaning and state more accurately what is intended." (Emphasis supplied.)

Previously the language had simply provided that the trustee shall be deemed vested with the rights of a creditor holding a lien. Finding it was inconsistent to say the trustee has a lien on property he owns as a result of his succeeding to the rights of the bankrupt, Congress saw fit to change the language so as to clarify this inconsistency. The language which was adopted to accomplish this purpose would appear to have gone farther than intended. This court must first determine whether a hypothetical creditor could have obtained a lien on the date of bankruptcy under Wisconsin law instead of examining what his rights would be as a lien creditor.

■ On the date of bankruptcy, Dempster's conditional sales contract was not properly of record under Wisconsin law since it had expired and was not refiled. The failure to refile destroyed the validity of the conditional sales contract as to purchasers and creditors who acquired rights subsequent to the expiration of the three-year period. American Laundry Machinery Co. v. Larson, 217 Wis. 208, 257 N.W. 608 (1934). In the absence of any other bar, a hypothetical creditor, on the date of bankruptcy, could have secured a lien superior to that of the claimant. A potential bar to the securing of such a lien was the Milwaukee Circuit Court restraining order which was still in effect on the date of bankruptcy. Neither counsel has cited any authority which is

enlightening as to the effect and scope of such order. The court has not been able to find any case which is analogous.

■ There are certain principles which might be helpful if this issue must be determined on the basis of Section 70c of the Bankruptcy Act. The apparent attempt behind Section 70, sub. c is to entitle the trustee to assert the same priorities as against secret liens, unfiled or unrecorded mortgages, and the like, as a creditor who had obtained a valid lien on the property in question by judgment, attachment, or other process could have asserted. Albert Pick & Co. v. Wilson, 19 F.2d 18 (8th Cir. 1927).

Under Section 128.18(1) of the Wisconsin Statutes, the receiver, appointed by the Milwaukee Circuit Court, as a representative of all the creditors, would have enjoyed rights superior to Dempster's unfiled lien. That section provides:

"Claims which for want of record or for other reasons would not have been valid liens as against creditors of the debtor armed with process, pursuant to which such property has been attached or levied upon, shall not be liens against the estate."

It is logical that the trustee in bankruptcy would enjoy as great a right as the state court receiver. To hold that Dempster's unrecorded conditional sales contract is void as to the state court receiver but not void as to the trustee in bankruptcy because the restraining order prevented a hypothetical creditor from obtaining a lien would constitute an abnormal result. An analogous case is that of In re Ripp, 242 F.2d 849 (7th Cir. 1957). There the bankrupt executed a chattel mortgage which expired, by the terms of a different Wisconsin statute than the one involved here, three years from the date of filing unless renewed. The filing was not properly renewed, and the chattel mortgage was held to have created no lien in favor of the mortgagee against creditors. Prior to the filing of bankruptcy, a creditor's

suit was initiated in state court, and an order was issued enjoining the mortgagor from transferring any of his property. The Court of Appeals held that the restraint obtained by creditors redounded to and became a part of the trustee's title when the bankruptcy intervened. The court used the following language at page 853 of 242 F.2d:

"* * * The bankruptcy court, with its paramount jurisdiction under the Constitution, superseded the state court's jurisdiction, with full right, however, to enforce the rights obtained by creditors prior to bankruptcy and still in existence."

The same reasoning is applicable here.

Counsel for the trustee claims rights in the baling press superior to those of the claimant by virtue of Section 70e(1) of the Bankruptcy Act. That section provides:

"A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor."

■ ■ Under Section 70e(1) the trustee must place himself in the position of some actual creditor who could have avoided transfer because the recording was not renewed. Lackawanna Pants Mfg. Co. v. Wiseman, 133 F.2d 482 (6th Cir. 1943); Janney v. Bell, 111 F.2d 103 (4th Cir. 1940). The Referee found there were four creditors who extended credit to Rosenberg Iron & Metal Co. subsequent to the expiration of the three-year filing period of the conditional sales contract. These creditors were: Allis-Chalmers Manufacturing Co., A. Terkel, Hein-Werner Corp., and National Salvage Company. Under Wisconsin law the filing of a conditional sales contract is valid for only three years unless refiled. The unfiled con·

tract is void as to all subsequent purchasers and creditors without notice. American Laundry Machinery Co. v. Larson, 217 Wis. 208, 257 N.W. 608 (1934).

█ Claimant contends that Allis-Chalmers Manufacturing Co. and A. Terkel had either actual or constructive notice of Dempster's lien because they had been doing business with the bankrupt prior to the date on which the three-year filing period expired. Assuming arguendo that this is sufficient to charge these creditors with constructive notice, the question as to whether Hein-Werner Corp. and National Salvage Company had notice at the time they extended credit to Rosenberg Iron & Metal Co. remains. There is nothing in the record to indicate whether either of these two creditors possessed actual notice. The question then is: Which party bears the burden of proof to show that the creditors who extended credit subsequent to Dempster's failure to refile its conditional sales contract had actual notice of the conditional sales contract?

New Dells Lumber Co. v. Pfiffner, 216 Wis. 638, 258 N.W. 375 (1935), touches on this point. It involved an action by a conditional seller against the conditional buyer and his mortgagee to recover the value of certain sleighs. The conditional sales contract was never recorded. The jury found that defendant mortgagee had actual notice of plaintiff's reservation of title in the sleighs. On appeal, defendant mortgagee claimed the evidence failed to establish that he had notice of the agreement reserving property in the plaintiff. The court, in addressing itself to this contention, stated at page 644 of 216 Wis., at page 378 of 258 N.W.:

> "We think it clear that, *unless it be shown* that a purchaser (mortgagee) had actual knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of the right or title in conflict with that which he is about to purchase, a conditional sale

contract would be void as to him. * * *" (Emphasis supplied.)

The case of Thomas v. Richards, 69 Wis. 671, 35 N.W. 42 (1887), by inference holds that the burden of proving actual knowledge rests with the claimant. That case concerned itself with the question of whether actual knowledge of the conditional sales contract by the sheriff when executing an attachment was sufficient to charge actual notice against the creditors of the vendee. The court examined the record and found there was no evidence showing that the party in interest had actual notice so as to defeat the attachment. The court upheld the validity of the attachments as against the holder of the unrecorded conditional sales contract. The natural inference following from both of these cases is that it was the burden of the party seeking to set aside the attachment, the conditional vendor, to prove that the third-party creditor had actual notice. In the first case there was evidence in the record to support the jury finding of actual notice. Had such evidence been lacking, it is obvious that the court would have reversed the jury's finding on this matter. In the latter case, the absence of such evidence in the record deprived the conditional vendor from recovering.

See also 8A C.J.S. Bankruptcy § 372 (6), p. 723. A case particularly in point is White v. Steinman, 120 F.2d 799 (2d Cir. 1941), cert. denied 314 U.S. 659, 62 S.Ct. 113, 86 L.Ed. 528. There the conditional seller prematurely refiled the conditional sales contract, thus rendering the contract void as to subsequent creditors under New York law. The burden was held to be on the holder of the conditional sales contract to show that there were no creditors of the conditional buyer without notice.

Counsel for the claimant cites In re Douglas Lumber Co., 2 F.2d 985 (D. Wyo.1924), for the proposition that the trustee bears the burden of proving no actual notice. This case was decided on the basis of an express pronouncement of the Wyoming Supreme Court which

was made under Wyoming law. The Wisconsin rule is different.

Claimant's counsel also relies on the concurring opinion in the case of In re Master Knitting Corporation, 7 F.2d 11 (2d Cir. 1925), where Judge Learned Hand indicated he believed the burden rested on the trustee. The majority opinion disagreed with this contention and held at page 12 of 7 F.2d:

> "It is to be observed that, since the goods were in the custody of the court below and of the trustee, the vendor was in the position of a plaintiff. The very existence of bankruptcy proceedings produced a presumption of the strongest nature that there were creditors, and by every principle of procedure the burden of proof lay upon the man seeking reclamation to show that he came within the statutory provision of notice. We perceive no difference between one who demands property at the hands of the trustee in the way Benerofe did and any other petitioner in reclamation; it is his duty to bear the burden of proof.

> "Let it be assumed that, if *all* the creditors of this bankrupt knew that this sale was conditional, the petition below should prevail, it remains true that the trustee has the right of *any* creditor, and the burden is on the conditional vendor to prove *no* creditor was without notice. No effort was made to make this proof."

Finally claimant cites the case of In re Clark Supply Co., Inc., 172 F.2d 363 (7th Cir. 1949). This case involves an interpretation of a Wisconsin statute which requires the filing of consignments for sale agreements. In this case the Journal Company stored a generator with Clark Supply Co., Inc. Clark Supply Co., Inc., went into bankruptcy, and the trustee claimed the generator. He contended that since the consignment contract was not filed, the Journal Company's title as to the trustee was void. The District Court, Judge Duffy presiding, returned the generator to the Journal Company. The Court of Appeals af-

firmed on the basis that since the statute relied on by the trustee, Section 241.26, only applied to consignments for sale or merchandising, it had no application here where the consignment was for storage only. The case is not in point as to the problem involved here.

The order of the referee is hereby confirmed.